Good afternoon, Your Honors. May it please the Court, my name is Denise Fabiano and I represent the Petitioner, Mark Richardson. I'd like to start with why, when there's a two-step interrogation, Chappell can be less protective for defendants than Kennedy's concurrence in Siebert and, therefore, contrary to Siebert. Then I can turn to why there was a two-step interrogation here and no curative steps. So when there's a deliberate two-step interrogation, the Kennedy concurrence is more protective because it requires specific curative steps to make sure that a defendant understands the import and the effect of the Miranda waiver. That makes sense because he's applying it only in the deliberate two-step category as opposed to Chappell, which applies to every situation. The specific curative measure test requires something affirmative to make sure that a defendant understands that waiver, whereas Chappell is more passive. It asks whether the taint has dissipated and, under New York law, a break in time alone might allow for the admission of such a statement under the single continuous chain of events test like here. That is what happened here. Under Chappell, the appellate division relied heavily on the five-hour time differential and noted that by the time the videotape statement was taken, Mr. Richardson seemed alert and relaxed. That's not – that doesn't satisfy the Siebert standard. Here, the State court completely failed to make a determination whether there was a deliberate two-step interrogation. And we know this for three reasons, because, first, the appellate – well, the appellate division says they're deciding it based on the hearing court's findings of fact about DeMuro, who said he didn't administer Miranda at the outset because he didn't think – he wasn't intending to cover new ground. Well, that's not dispositive. Well, could you explain to me what the two-step process is within the meaning of Justice Kennedy's concurrence? It would be where an officer or the authorities deliberately withhold Miranda warnings, knowing that they're engaging in custodial interrogation with the purpose – with the purpose of later obtaining a similar or something along the – related – Kennedy says related to the initial statement. So the idea is what was called the Missouri two-step there, that you first do custodial unwarranted interrogation, get the guy to confess, and then you, in quotes, maybe launder that by doing it all over again, this time with warnings. Yes. What is the evidence that DeMuro did that? I thought that the fact-finding of the hearing court was that he made a mistake. He thought he didn't need to give warnings the first time. That is absolutely correct. And he said he – So why is that – why is that the same thing as I know I'm supposed to give warnings, but ha-ha, I can break that rule so long as I then afterwards repeat the interrogation with warnings? Because here, he only said that he didn't give Miranda at the outset, and he didn't give it at the outset because he wasn't planning to cover new territory. Right. And then when new territory came up, in his view, he did give the warnings. No, he did not. I'm sorry. So let me just go through what – he absolutely did not. So in the – in DeMuro's testimony as such, he asks him – he's leading him through the interrogation, going over the February 5th statement, the initial statement, and he's just locking them in. He's saying, and you said this, and you said this. And then he says, well, all of a sudden, now we have videotape evidence. Now we have phone records. Right. And then he goes a step beyond that, and he – this is what he says. So his testimony – what we have here is as close to Siebert as you're going to get, because we have DeMuro's testimony establishing the fact that he knew he was engaging in custodial interrogation, in deliberate attempt to get – to go beyond what he was going to cover. His – I wanted to – But the district – the trial court, it seems to me, made a finding that he did not have deliberate misconduct, that he was in good faith. No. Well, only at the beginning, Your Honor. That's what I'm saying. They never made the determination that when he switched course mid-interrogation, they only determined that he should have given them at the beginning, because even going over the February 5th statement was improper. Of course he should have. Right. Of course he should have. So they never made a determination when he changed course. Now they're not – they're not looking at his reasons then. He doesn't give any reasons. This is what he says. You know, I thought I was going to be on safe ground as long as I didn't break new ground. You know what I mean? As long as I reviewed what had already been done, I wasn't too concerned about throwing Miranda out there. I don't know if that's right or not, but, you know, I felt like let's review. Let's see what we did. But I thought that you – you were describing the two-step. Yeah. You said or suggested that a feature – a central feature of that is deliberately not warning, knowing that a warning, Miranda warning, should be given. And here we have, I think, credited testimony, as I understand it at least, that there was not that type of deliberate decision not to give Miranda. Again, the extent of the decision is only that – it only speaks to his intent at the outset of the interrogation with respect to going over the February 5th statement. There is no finding with respect to DiMiro's mid-interrogation decision to, then I wanted to jolt him. I know that's new ground. He acknowledges it. The saliva on the breast, that's something he didn't know about. I was going to read him Miranda rights, but – because I know I'm approaching new information. I hit him with it, and I waited for a reaction. This was my finale. I expected it was going to shake him. That is a – that was never passed on by any of the State courts. And we should draw from that the conclusion that the plan was to then repeat this all. Well, why we can draw from that – first of all, it was clearly deliberate at that point, right, that he's not giving Miranda, and he knows he's going beyond that. Well, deliberately not giving Miranda warnings is a different thing than deliberately conceiving a scheme to conduct an interrogation in violation of Miranda, get a confession, and then leverage that confession by starting all over again with a warning, a warned confession. So where that is in the record is immediately after he hits him with this new information, Mr. Richardson invokes his right to remain silent. Well, that's right. Instead of – I misremembered. They don't then give him warnings. They then stop the interrogation. So in other words, he knows he's gone beyond Miranda already. He knows – he knows now he's covering new territory. And Mr. Richardson invokes his right. Right. Instead of bringing him right to the cell, he's invoked his right now, and you know you've gone beyond what you said you were going to do. He then gives him Miranda, just like Conceiver, trying to get another statement. And Mr. Richardson says no again. And then they take him back to – or they – Then, finally, they bring him back to the cell. So you're saying that the fact that he gave the warnings at that point is a bad thing? No. Well, it is indicative of his intent. I'm not saying it's a bad thing. It does go speak to his intent. Well, but wait. I'm still having trouble because at that point, he had elicited something, but what is then going to take place would be a new Mirandized interrogation. Which is exactly what happened in Sieber. No, no, no, no. He violated Miranda. Wait, wait, wait. It's not just a repetition. It's not that he's already gotten everything he needs, and now he's going to give warnings and repeat, rinse and repeat. This is instead – he's hit this point where novelty is coming up. Maybe he misgages the point at which that occurs. Maybe he should have done that at all because he should have given him warnings in the first place. At any rate, he then gives him warnings. Out to that point, there's not much that's happened that is going to get into the trial record. What is going to get into the trial record is what happens following that, after they respect his right, his invocation of his right to silence, and then we've got a separate problem that happens. Well, well. When he, Richardson, reopens the discussions, and then we have an argument that Officer Henriquez goes too far in what he is allowed to do in response to that reopening. But that's a separate story. That's where all the bad stuff comes out. Yes. But what we have is it's all related. And the fact that he was thwarted, that he's attempting to go beyond what he said he was going to cover, and Richardson invokes. He says something. He does make a confession. It is a confession. I – maybe she was sitting on my lap, and that's part of the sexual assault. Did that come in to the trial, that statement? I thought that was excluded. Yes, that is excluded. Yes. Well, so what does that have to do with anything? It goes to – he's – Because you said – It goes to the two-step strategy that he's trying to get a confession. What I'm saying – It's suppressed because he didn't give an oriented – What I'm saying that's happening is the counter – and maybe this is an extreme example, and you'd be quite right to say that it doesn't have to go that far to Instead of giving Miranda warnings at that point and then taking him back to his cell when he invokes his right to silence, if instead they had continued with the interrogation still unwarned, gotten all the statements that they got eventually in the post-Henriquez episode, and then called the ADA in and did a laundered Miranda warning interrogation, but that's not what happened here. No, and Siebert doesn't require that because Siebert makes the point that that is the – it's a one-in-a-million example in Siebert where we state – Yes, no, it's a one-in-a-million exception to a very defendant-hostile rule of Oregon against Elstad. Yes. And four justices were perfectly willing to swallow even that, and the swing vote says, well, this is the one weird case where there is a very extreme, deliberate attempt to make use of a loophole. And I'm not sure I see that in this case in light of what the New York trial judge found with respect to the officers in New York. Kennedy also points – he says – well, they say you need to look to other factors, right, because you may not have an actual, this is what I did, just like in Siebert. But again – Well, but again, we're not here with federal agents and a federal prosecution and trying to decide what we think the constellation of Miranda-Elstad-Siebert means. We're here asking if this is directly contrary to established Supreme Court law or is an It's both. I can move on. It is both. I believe it's both because I don't think they decided the two-step process, the two-step, whether there was one. But it's also an unreasonable application. And again, it's unreasonable because of DeMuro's explicit testimony about what he did. And then Kennedy gives the example as a hallmark of two-step interrogation. He gives the example of look at how the suppressed statement is used later on. The officer relies on it. The post-warning interview is a cross-examination. The officer confronts the defendant with the inadmissible statements and pushes them to acknowledge them. That is exactly what happened here. And that, too, goes to the intent of the officer in determining whether it was a deliberate two-step interrogation. We have the failure to give Miranda at the outset. And this is a 20-year – this is detectives, but on the job for 20 years. Okay. You want to say he didn't mean to give it at the outset. He clearly changes midstream and decides to go way beyond what he said he was going to do. He invokes. Instead of bringing him to the cell, he reads the Miranda again, still trying to get a statement. Doesn't get it right away. Suppose he had not invoked his rights in response to getting Miranda warned. If he had spoken? And at that point, he speaks and gives a much different version. He says, yeah, I stabbed her at that point. Well, that's the – that's – That would be a violation exactly why? Well, it depends on if it was related to the initial statement. It would depend on how he used it. He just put DeMuro – He gave – just what he did here. He gives Miranda warnings, starts to ask a question, ask any question. Pick a question at random. You actually stabbed this lady? And he says, yeah, I did. That would be inadmissible because why? I'm not saying it would be. It would have to be analyzed under whether it relates back to the initial statement and does it go to DeMuro's intent as to what he's getting. He's trying to get him talking about the crime. But I'm just trying to figure out why that would be evidence of a two-step process because what's happening there, it seems to me, what's happening at the point where DeMuro does give warnings is not that he is now going to say everything I just said, all the discussion we just had, you reaffirmed that, right? Yes. That would, I suppose, look like a two-step process. But if instead he goes on to new material and gets additional... So Kennedy's test is if it's related to the initial statement and it was deliberate, if it's related to the initial statement and it's deliberate, it requires some sort of curative. Doesn't that put you in a very difficult position? To say that it's something that has to be related, doesn't that put you in a very difficult position with respect to unreasonable applications? Because the word related could mean just about anything in that context. And if the... But here we're not in that position. Here we have the facts that it's all the second statement that is suppressed because it was insufficiently attenuated. It was undertaken in very egregious circumstances where, you know, Richardson's brought back in crying, sobbing, and gives a fuller accounting of why his DNA might be on the victim's breast. So you... Let's hear from the other side. You've reserved some time for rebuttal. Okay. But I think we have your idea in mind. Thank you. Good afternoon. Stephen Kress from the New York County District Attorney's Office on behalf of the respondent. So I think what we've just been or the Court has been talking about with Petitioner's Counsel here is really the unreasonable application prong, which is distinct from the contrary to prong. And I just, as a preliminary matter, would just note that the contrary to prong was, I think, really the only issue that certificate of appealability was granted on by the district court. So I don't think the Court even necessarily has to reach the unreasonable application argument. Certainly the Court has the power to do that, but it's not obligated to. I'll just note that as a preliminary matter. But I do want to pick up on some things that the counsel has said. There was absolutely a finding by the State court that speaks to Detective DeMuro's intent later on at the end of the first interview. So not only did the State court make a finding about his intent or, excuse me, about his failure to give Miranda warnings as a product of misjudgment rather than deviousness, the State court also made a finding, this is on page 469, saying that it accredited his testimony that when he brought up the DNA evidence, he was not expecting the petitioner to make a statement in response to that. And he testified. He said, you know, I threw out the DNA evidence there, and I wanted to see what his reaction would be. I wanted to get a reaction. That doesn't necessarily mean an incriminating statement. Reaction could be, for example, what ultimately happened here was the petitioner decided to invoke his right to remain silent. So I think you absolutely do have a finding that supports the fact that even later on at the end of the first interview, the detective was not deliberately trying to violate Miranda. But as Judge Lynch pointed out, that the question of deliberate violation is still different from whether the two-step technique that Seibert addressed was actually in play here. You not only need a deliberate violation, you also need eliciting an actual confession. And I would refer to the Court to Mitchell v. McLaren, which is the Sixth Circuit case we cite in our brief, where the Supreme Court of Michigan had said there was no confession here, deliberate Miranda violation, but no full confession, just an inculpatory statement. And, in fact, just like in this case, the petitioner there had admitted to being at the scene of the crime. The Supreme Court of Michigan said no confession. Seibert, no, Seibert doesn't apply. And the Sixth Circuit said that's a reasonable application. And I think it absolutely is, and I think the Court could easily make that same – reach that same holding in this case. Let me ask you a question about the record. There is a question here, is there, not, about Richardson's demeanor? Do you remember that? I'm not sure. What's the question that you're thinking of, Your Honor? Well, his demeanor during the interview. I thought there was – from your point of view, that's the question. Oh, well, in terms of his change in demeanor throughout the course of the interview? Where I'm heading is this. The question of whether there was a video of this interrogation. There was ultimately a videotaped statement, yes, Your Honor. And do we have that video? I don't believe the Court has been provided with it. Certainly we could if the Court would like it. To put it another way, would such a video be helpful to us? I don't think the Court needs the video. No, I think the characterizations that are given in the State court record are accurate in terms of the Petitioner's demeanor on the video and how he appears to be. Well, not only accurate, we've got to defer to those characterizations. That's correct, Your Honor. And certainly they're not contradicted anywhere. There are, of course, multiple statements. The statement that I think you've just been discussing with Judge Cabranes is the ultimate videotaped statement taken by the ADA at the end of the day. That's right. That is on video. If we were empowered to make our own decisions about this and not defer to the State courts, we could look at it and make that determination. There are other episodes or other portions of the day at which there may be other demeanors at stake. I think Ms. Fabiano was referring to what Richardson's demeanor was at the time he returned to the interrogation room after his outside-the-bathroom conversation with Detective Benriquez, right? Yes. And there it said that he was in tears and upset, right? Yes, that's right. And that's not contested, is it? No, it's not contested. And actually, I think the change in his demeanor from that point to the time that he gives the videotaped statement actually supports the reasonableness of the ultimate determination here, which is Justice Kennedy talks about a change in time and circumstances. And here that's a very significant change in circumstances in terms of whether you're ultimately getting to the question of can the Petitioner appreciate the Miranda warnings and make a valid waiver, which is the ultimate goal of these curative steps, certainly if he has gathered himself from being, you know, in a state of, you know, being seriously upset. But if there is a two-step process as defined by Justice Kennedy, would you agree that Justice Kennedy's view of what needs to be done then is affirmative curative steps, whereas if we are in the world of Aragon v. Elstad, because there was no deliberate two-step process, then the statement, the second-round Mirandized statement is admissible unless it is involuntary. That's correct. They're separate steps. It seems to me a, how to put it, a less defendant-friendly version than the version that the New York State courts apply. Yes, that is correct. I think if you're in Elstad territory, New York does apply a much more defendant-friendly standard, and I would agree, too, that Cybert itself is different and more defendant-friendly than Elstad. And if I could actually speak on the contrary two-prong. So I think it's, the Chappell rule undisputably is broader in the sense that it applies to, you know, well beyond just deliberate Miranda violations. But the ultimate outcome, and this is, I really think, the key to why it's not contrary to Cybert, the ultimate outcome of both tests is the same, which is that was the Miranda violation cured? That's the ultimate question. And Cybert says it's cured if the defendant has been returned to a position where he can appreciate and understand the Miranda warnings in the waiver. And I think Chappell is even broader than that and actually says the defendant has to be returned to a position where he's not under the influence at all of this prior question. And I think it's illogical. The irony here, in a way, is that the New York standard is exactly what the dissenters in Elstad wanted and is what the plurality, so to speak, the four other than Kennedy who voted for the result in Cybert wanted. But it's not exactly what Justice Kennedy created. Well, so I think the plurality opinion in Cybert and the Chappell standard are similar. And the New York court of appeals has said that. But I think why there ultimately is, I want to say overlap, why it would be impossible to suppress a statement under Cybert but have it admitted under New York law is because you couldn't say that a defendant has been returned to the point where he's not at all under the influence of prior questioning, which is the New York standard, and at the same time say, well, but he's still under enough of an influence that he can't validly appreciate and understand the Miranda warnings and waive them. And that's really what you would need to find in order to find that these two standards contradict one another and that the New York standard is contrary to Cybert. Now, I was just going to say, Your Honor, I know we didn't touch on either Mosley or Chapman in Petitioner's argument. I'm happy to answer any questions if the Court has those on those two issues. But otherwise, we just ask that the judgment of the district court be affirmed. Thank you very much. Just at the outset here, I would say that the unreasonable application is the COA does cover it because the district court granted it, decided the issue, granted it, and didn't limit the COA to simply one prong of Cybert. But regardless, the second statement here is part of the two-step process. The second full confession that was suppressed is part of the two-step process. And it has to be considered not just, you know, it's not just the more – it's what happened before Miranda. We have a separate – not only a Mosley violation, but we have a – he suppressed it based on the fact that he said Miranda wasn't effective at that point. So that statement, which is a full confession, is part – that's where the deliberate two-step process happened. And it just continues by the time you get to the videotape statement. And to say he's not under the influence under these facts – I'm sorry. You're saying that there was a deliberate plan to not give Miranda warnings, then sort of give Miranda warnings at the end of a discussion, then allow the invocation of rights, and then exceed the limited opening for further discussion that occurs when Richardson comes back to Enriquez. And all of that was plotted? Was deliberate. Yes. Was deliberate. They planned for Richardson to come back to Enriquez. No, you don't have to plan for that. Your plan has to be to obtain a second inculpatory statement. Whether or not you're fully successful or how it goes down is another matter. But that was – his deliberate – he has deliberately said, I didn't give Miranda at this point. I gave it at – I didn't give at this point. Then he goes beyond that. He gives it. And they get him back in. They seize on the next opening that they get to get another statement. And they go to work on him to get him to come back in to talk to them. Thank you. Thank you very much. Well argued on both sides.